

ENTERED
11/15/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| WESTBURY  COMMUNITY  HOSPITAL § | CASE NO: 12-33651 |
| LLC § | |
|     Debtor(s) § | |
| § | CHAPTER  11 |
| § | |
| B JOHN LANGE, III, *et al* § | |
|     Plaintiff(s) § | |
| § | |
| VS. § | ADVERSARY NO. 12-03476 |
| § | |
| REGIONS BANK § | |
|     Defendant(s) § | |

## MEMORANDUM OPINION

Downtown Hospital, LLC's and 5556 Gasmer LP's ("Movants") Motion for Summary Judgment to Avoid Regions Bank's Lien under Section 548 of the Bankruptcy Code is dismissed because the Movants lack standing. Summary Judgment is denied with respect to Movants' objection to Region's claim.

### Background

In October 2007, Regions made several loans to Continuum Healthcare, LLC and its related subsidiary entities, including Baytown Community Mental Health Center, LLC and Continuum Hornwood, LLC.  Under the Continuum Loan Agreement, Regions was granted a first priority lien on substantially all of the assets of each of the Continuum Entities, including Baytown and Hornwood.  In January 2011, Continuum Healthcare and Continuum Management transferred the assets of Baytown and Hornwood to Westbury Community Hospital, LLC ("Debtor").  All of the transferred assets were Regions' collateral.  At the time of the Asset Transfer, Downtown and Continuum Management valued the assets at $21,250,000.00. (Case

No. 12-03476, ECF No. 37 at 4). Neither Baytown nor Hornwood received any consideration for the transfer of assets to the Debtor. Regions claims that both Hornwood and Baywood were insolvent at the time of the transfer or were otherwise left insolvent as a result of the transfer. Moreover, Regions contends that it did not consent to the transfer nor did it receive any consideration from the transfer. At the time of the Asset Transfer, the outstanding obligations owed to Regions under the Continuum Loan Agreement totaled approximately $12,000,000.00. Regions asserts that as a result of the Asset Transfer, it had several claims against the Debtor, including a fraudulent transfer claim pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA") and a conversion claim.

On June 1, 2011, Regions made a demand for payment on the entire balance under the Continuum Loan Agreement executed in October of 2007. The Debtor was not originally a party to the Continuum Loan Agreement. Regions alleges that notwithstanding its rights to pursue its conversion and fraudulent transfer claims against the Debtor, it forbore from exercising its legal rights and entered into the Joinder Agreement with the Debtor on July 13, 2011. Under the Joinder Agreement, the Debtor became an obligor under the Continuum Loan Agreement executed between Regions and Continuum Healthcare, LLC. At the time the Joinder Agreement was executed, the balance owed to Regions under the Continuum Loan Agreement was approximately $4,000,000.00. (Case No. 12-03476, ECF No. 35-3 at 3). The agreement also granted Regions a first priority lien on all of the Debtor's assets to secure the obligations.

On August 30, 2011, Regions filed a Verified Complaint for Appointment of Receiver, Injunctive Relief, Writ of Possession, Damages, and Accounting in the United States District Court for the Middle District of Tennessee against Continuum Healthcare, Bobby Rouse, Sr., and other subsidiary guarantors. (Case No. 3:11-cv-00831). The Debtor, Westbury Community

Hospital LLC, is a named defendant in the complaint. However, the complaint includes neither a fraudulent transfer action nor a collateral conversion action against the Debtor.

On October 6, 2011, the Debtor and the Continuum Parties entered into a Forbearance Agreement pursuant to which Regions agreed to forbear temporarily from exercising its remedies under the Continuum Loan Documents against the Continuum Parties, including Debtor, while the Continuum Parties performed the covenants set forth in the Forbearance Agreement. (ECF No. 54-1).

The Movants bring a lien avoidance action against Regions' secured claim on the basis that the Joinder Agreement was a fraudulent transfer. Alternatively, Movants object to Regions' claim on the basis that the Joinder Agreement is unenforceable for lack of consideration.

## Standing

This Court finds that Downtown Hospital, LLC and 5556 Gasmer LP do not have standing to assert state law actual or constructive fraudulent claims against Regions, but do have standing to object to Regions' claim for lack of consideration.

"In the Claim Objection, the [movants] alleged that the Proof of Claim should be disallowed because, *inter alia*, there was a failure of consideration, it was the product of a fraudulent transfer, and that Regions was unjustly enriched." Pursuant to section 541, the Debtor's estate includes causes of action that existed as of the petition date, and the trustee or debtor in possession becomes the "real party in interest with exclusive standing to assert [the claims]." *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (internal citations omitted); *see also In re Performance Interconnect Corp.*, No. 07-3100, 2007 WL 2088281, at *2 (Bankr. N.D. Tex. July 19, 2007) (state law fraudulent transfer claims are property of the estate); 11 U.S.C. § 544(b); 11 U.S.C. § 548.

Movants allege that the Joinder Agreement that granted a security interest in Debtor's assets to Regions was a fraudulent transfer. The challenged transfer occurred prior to the Debtor filing bankruptcy so any fraudulent transfer claims with regard to the Joinder Agreement became property of the estate at the time of filing. The Chapter 11 Trustee is the exclusive party with standing to bring this fraudulent transfer action. The Chapter 11 Trustee, John Lange, has not joined movants' fraudulent transfer action. Accordingly, the motion to invalidate Regions' lien as a fraudulent transfer is dismissed, without prejudice to the rights of the Trustee.

Movants do have standing to object to the claim on the basis that it is unenforceable for lack of consideration. Pursuant to 11 U.S.C. §§ 502(b)(1):

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

If a party objects to a proof of claim, the objection becomes a contested matter under Fed. R.Bankr. P. 9014. In this case, the disputed amount owed to Regions arises from the July 13, 2011 Joinder Agreement, which purports to obligate the Debtor for the obligations of Continuum Healthcare and purports to pledge substantially all of Debtor's assets to Regions. The Movants claim that the Joinder Agreement is unenforceable because Regions provided no consideration to the Debtor.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

(5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Summary Judgment to Disallow Regions' Proof of Claim Denied**

There is a genuine issue of material fact as to whether Regions gave consideration to the Debtor under the Joinder Agreement. Accordingly, Movants' motion for summary judgment is denied.

Under the Joinder Agreement, the Debtor became an obligor on the Continuum Loan Agreement and granted Regions a security interest in all of its assets. Regions' Proof of Claim asserts a first-priority secured claim against the Debtor in the aggregate principal amount of $3,997,215.08, plus prepetition interest and other expenses. (Case No. 12-03476, ECF No. 35-3 at 3). The Proof of Claim states that the Debtor's assets exceeded the amount owed to Regions at the time of filing. Downtown Hospital now argues that Regions' claim should be disallowed because it did not provide consideration to the Debtor at the time of the Joinder Agreement.

A contract must be supported by adequate consideration in order to be enforceable under contract law. *Bratton v. Bratton*, 136 S.W.3d 595, 597 (Tenn. 2004).[2] Consideration can take the form of one party refraining from doing something it has a legal right to do (i.e. forbearance of a legal right). *Id*. Regions argues that it gave consideration to the Debtor in two forms. First, it claims that "the receipt of Regions' collateral, which Downtown and Continuum agreed was worth $21,500,000, was sufficient consideration for entry into the Joinder Agreement and the grant of a security interest to Regions." (Case no. 12-03476, ECF No. 37 at 9). Second, Regions alleges that "the Debtor also received adequate consideration for entering into the Joinder Agreement because Regions elected to forbear from exercising its legal rights and remedies with respect to the Debtor and its collateral." *Id*.

The Asset Transfer of Regions' $21,500,000.00 worth of collateral to the Debtor cannot, by itself, be the consideration provided for the July 13, 2011 Joinder Agreement because it occurred in January of 2011. The Joinder Agreement made the Debtor a guarantor for Continuum Healthcare's debts to Regions, notwithstanding the fact that such debts were already in default, accelerated, and deemed immediately due. However, the fraudulent transfer and

---

[2] The Joinder Agreement contains a choice of law provision providing that it should be construed and interpreted in accordance with the laws of the State of Tennessee.

conversions claims that arose from the Asset Transfer provide at least some support for Regions' argument that there was an implied forbearance (or substitution) agreement.

Regions cites to several cases, such as *In re All Star Feature Corp.*, that have held that "Forbearance, even without an agreement to forbear, will serve as a consideration, if it be completed." *In re All Star Feature Corp.*, 232 F. 1004, 1007 (S.D.N.Y. 1916). In *In re All Star*, the Court found that there was consideration in the form of forbearance of the right to repossess the leased premises and let the lessee remain in possession, even though there was "no express reference to forbearance in the contract and no statement that the lien was in exchange for it, but the situation reasonably implied that the parties so intended it." *In re All Star Feature Corp.*, 232 F. 1004, 1009 (S.D.N.Y. 1916); *Zimmerman Ford, Inc. v. Cheney*, 132 Ill. App. 2d 871, 873, 271 N.E.2d 682, 684 (Ill. App. Ct. 1971) ("An agreement to forbear need not be in express terms or for an exact period of time; the terms may be gathered from the surrounding circumstances from which forbearance for a reasonable time may be implied.").

The circumstances in this case create a genuine issue of material fact as to whether there was an implied agreement to substitute Regions' conversion and fraudulent transfer actions (or an implied agreement to forbear from pursuing these actions against the debtor) in exchange for the Debtor becoming an obligor under the Continuum Loan Agreement and granting a "replacement lien"[3] on its assets to secure its obligations to Regions.

Under the Continuum Loan Agreement, executed in October 2007, Regions was granted a first priority lien on substantially all of the assets of each of the Continuum Entities, including Baytown and Hornwood. In January 2011, Continuum Healthcare transferred $21,250,000.00 worth of Regions' collateral to the Debtor without providing any consideration to Regions,

---

[3] The Joinder Agreement does not refer to Regions' security interest in the Debtor's assets as a "Replacement Lien." Regions uses the phrase in its contention that the parties intended it to replace Regions' converted collateral resulting from the Asset Transfer.

Baywood, or Hornwood, and without Regions' consent. As a result of this transfer, Regions alleges that it had several claims against the Debtor, including a conversion of collateral claim and a fraudulent transfer claim pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA").

On July 13, 2011, the Debtor and Regions executed a Joinder Agreement where the Debtor became an obligor under the Continuum Loan Agreement between Regions and Continuum Healthcare, LLC, secured by a first priority lien on all of the Debtor's assets. At the time the Joinder Agreement was executed, the balance owed to Regions under the Continuum Loan Agreement had been reduced from $12,000,000.00 (at the time of Asset Transfer) to approximately $4,000,000.00, due to the sale of collateral owned by one of the other Continuum Entities. Regions could have asserted a fraudulent transfer claim against the Debtor pursuant to TUFTA for amounts equal to the *lesser* of the amount owed to Regions by the Continuum Entities ($4,000,000.00) or the value of the assets transferred pursuant to the Contribution Agreement and Asset Transfer ($21,500,000.00). Tex. Bus. & Com. Code, § 24.009(b). Therefore, a successful TUFTA action would have allowed Regions to obtain a judgment of $4,000,000.00 against the Debtor.

The parties may have intended for the Joinder Agreement to eliminate Regions' TUFTA action by providing Regions with "reasonably equivalent value" in exchange for the January 2011 Asset Transfer.[4] Likewise, the Joinder Agreement may have been intended to cure Regions' conversion claim arising from the January 2011 Asset Transfer. Under the Continuum Loan Agreement, Regions was granted a security interest with a right to possession of its

---

[4] Tex. Bus. & Com. Code Ann. § 24.008(a)(1). A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation **without receiving a reasonably equivalent value** in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

collateral upon default. As a result of the January 2011 Asset Transfer, the Continuum Entities were in default and the Debtor, allegedly without proper authorization, took possession of Regions' collateral. Accordingly, Regions appears to have had a bona fide claim for conversion of collateral, subject to proof.[5] When Debtor signed up as obligor and granted a lien on all of its assets under the Joinder Agreement, this effectively returned to Regions the collateral that was converted in January, 2011. This supports the inference that the parties attempted to place Regions in the position that it would have been in had the January 2011 Asset Transfer never occurred. Accordingly, it is possible that the Joinder Agreement may have been intended to extinguish the conversion and fraudulent transfer actions.

To date, Regions has not filed a lawsuit against the Debtor on either the conversion claim or the fraudulent transfer claim. On August 30, 2011, just over a month after the Joinder Agreement was executed, Regions filed a complaint against the Continuum entities, including the Debtor (Westbury Community Hospital), after defaulting under the Continuum Loan Agreement. In its complaint, Regions abstained from bringing any conversion or fraudulent transfer actions against the Debtor. (Case No. 3:11-cv-00831). This provides further support for inferring a substitute agreement.

On October 6, 2011, the Debtor and the Continuum Parties entered into a Forbearance Agreement pursuant to which Regions agreed to forbear temporarily from exercising its remedies under the Continuum Loan Agreement against the Continuum Parties, including the Debtor. Under this agreement, the Continuum Parties were required to perform a number of covenants,

---

[5] *See, e.g.*, *Walters v. Northcutt*, No. 12-03-00247-CV, 2005 WL 341694, at *9 (Tex. App. Feb. 10, 2005) ("To recover for conversion, a plaintiff must prove that (1) the plaintiff owned, possessed, or had the right of immediate possession of the property, (2) the property was personal property, (3) the defendant wrongfully exercised dominion or control over the property, and (4) the plaintiff suffered injury.") (citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997)); *see also In re Littleton*, 106 B.R. 632, 635 (B.A.P. 9th Cir. 1989) (creditor satisfies possessory interest element of conversion where loan documents provide for right of immediate possession upon event of default).

many of which the Debtor was specifically excluded from performing. This agreement does not purport to be a forbearance of Regions' conversion or fraud claims against the Debtor, nor does it mention the Joinder Agreement executed between Regions and the Debtor. The fact that Regions is forbearing from temporarily exercising its default rights under the Continuum Loan Agreement, without reserving (or even mentioning) any rights regarding a conversion or fraudulent transfer claim against the Debtor, supports the inference that the Joinder Agreement was intended to provide Regions with a "replacement lien" and extinguish those claims.

Downtown Hospital argues that the deposition of Robert Hawkins, corporate representative of Regions, proves that there was no implied agreement to forbear or substitute the fraudulent transfer and conversion claims. He stated in his deposition that Regions did not provide any "property for consideration" under the Joinder Agreement:

> **Q:** You can pass that back. Thank you. Okay. After the Joinder Agreement that's reflected in Exhibit 7, was there any — did Regions ever extend any cash or credit to Westbury Community Hospital, LLC?
> **A:** No.
> **Q:** Did it provide any other consideration to Westbury Community Hospital, LLC, in consideration of its execution of this agreement?
> **MR. HUSTED:** Objection, form.
> **A:** I mean, like, money or —
> **Q:** (BY MR. JUDD) Okay. Any other *property* —
> **A:** Not that I —
> **Q:** — for consideration?
> **A:** Not that I know of, no.

(ECF No. 50 at 2).

The above deposition testimony does not preclude the Court from inferring that there was an implied agreement that the Debtor would join as a party to the Continuum Loan Agreement and grant Regions a "replacement lien" in place of Regions' conversion and fraudulent transfer claims against the Debtor. When asked if "any other property for consideration" was provided to the Debtor, Regions' representative responded "Not that I know of, no." This response does not

defeat the argument that the parties intended a substitute agreement because Hawkins may not have considered giving up legal claims to mean providing "property for consideration." Hawkins was never asked if Regions gave consideration in the form of forbearance or substitution of its legal claims.

The circumstances in this case create a genuine issue of material fact as to whether there was an implied agreement to substitute Regions' conversion and fraudulent transfer actions in exchange for the Debtor becoming an obligor under the Continuum Loan Agreement and granting a lien on its assets. Accordingly, movants' motion for summary judgment is denied.

## Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **November 15, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE